NATIONAL CARBON CO. v. NUNGESSER ELECTRIC BATTERY CO.

(Circuit Court, N. D. Ohio, E. D.    August 2, 1907.)

No. 6,940.

PATENTS—INFRINGEMENT—BATTERY FILLER.

    The Richmond and Zeller patent, No. 641,546, for a battery filler, *held* not anticipated, valid, and infringed.

In Equity.    On final hearing.

Thurston & Woodward, for complainant.
Weed, Miller & Nason, for defendant.

TAYLER, District Judge.    This is an action based upon the alleged infringement of patent No. 641,546 for a battery filler issued January 16, 1900, to Richmond and Zeller, assignors, to the complainant. The defendant denies infringement, and also the validity of the patent. Proof is made of patent No. 809,526 issued to the defendant for a machine for filling dry batteries, which substantially illustrates the alleged infringing device.    I am satisfied that the complainant's patent was not anticipated, and that it is valid.    The difficult and serious question is as to its infringement by defendant's device.

Both devices exhibit an interesting, ingenious, and effective method of economically filling dry batteries, of which many millions are annually made in this country.    The ordinary dry battery is a deep cylindrical zinc cup with a suitable absorbent lining; a central carbon electrode around which, in the zinc cup, is tightly packed a mixture of finely divided carbon and manganese dioxide, moistened by a solution of zinc chloride.    The carbon electrode, which is hard and rigid, projects slightly above the top of the zinc cup.    The evaporization of the moisture in the packed filling is prevented by a seal of pitch or similar substance.    The purpose of both complainant's and defendant's device is to put the carbon electrode centrally in the zinc cup, and to pack the battery filling material around the electrode.    A result especially desired and manifestly accomplished by the devices is uniformity in the density of the packing.    Generally described, the machine consists of a downwardly yielding table or support upheld by a measured resistance which determines the density of the packing. The packing is tamped in the cylinder by rotating tamping bars operated perpendicularly by a vertically reciprocating member and rotated by a suitable device unimportant so far as this proceeding is concerned. The upper or exposed end of the electrode is held by spring fingers which disengage when the jar is filled.    It is plain that a machine which will perform all of the functions necessary to produce these results must represent an ingenious combination of many well-known mechanical devices.    To accurately and fully describe the machine would acquire much detail unnecessary in this opinion.

The following are the claims of the patent which the complainant insists are infringed:

"1. The combination of a yielding support for the article to be filled, with a vertically reciprocating cross-head, a vertical member rotatably mounted in : .id cross-head, tamping bars secured to said member, and means for turning said member on its axis, substantially as described.

"2. The combination of a yielding support for the article to be filled, and a stationary vertical bar having on its lower end means for holding a core, with a vertically-reciprocating cross-head, a vertical sleeve which embraces the said vertical bar and is rotatably mounted in the cross-head, tamping bars secured to said sleeve, and means for turning said sleeve upon its axis, substantially as described."

"4. The combination of a yielding support for the article to be filled, an immovable vertical bar, and spring fingers on the lower end of said bar, with a vertically-reciprocating cross-head which embraces said bar, a vertical sleeve which also embraces the bar and is rotatably mounted in the cross-head, tamping bars secured to said sleeve, and mechanism for turning said sleeve upon its axis, substantially as specified."

"6. The combination of a movable support for the article to be filled, means for yieldingly upholding the same support, and a clutching device which acts automatically to permit said support to move downward and to prevent it from moving upward, with a vertically-reciprocating cross-head, a member rotatably mounted therein, tamping bars secured to said member, and means for turning said member upon its axis, substantially as specified.

"7. The combination of a vertically movable cross-head adapted to support the article to be filled, a pivoted lever having a weight upon one arm, a link connecting the other arm with said cross-head, and a clutching device which acts automatically to permit the downward movement of said cross-head, and to prevent its upward movement, with a vertically-reciprocating cross-head, a member rotatably mounted in said cross-head, tamping bars secured to said member, and means for turning said member upon its axis, substantially as specified."

The chief contentions of the defendant are these:

"(1) The patent in suit is not a pioneer, and is therefore not entitled to invoke the doctrine of mechanical equivalents.

"(2) The disclaimers of the applicant during the progress of his application in the Patent Office limit the claims to precisely the construction shown and described.

"(3) The prior art discloses all the elements of the claims in suit performing the same functions, operating in the same way, and for the same purpose as in complainant's patent.

"(4) A subsequent patent has been issued covering defendant's structure, and the presumption arises that it does not infringe.

"(5) The defendant's structure, though performing the same functions and organized for the same purpose, does not contain the combination of elements called for by complainant's claims here in suit, and therefore does not infringe said claims."

Let us now examine the two devices with a view of discovering whether, and if so, how, the defendant's machine differs in principle or in patentability from complainant's. This question we must answer by an examination of the vertically reciprocating members of each. Both devices are designed for the one purpose, to wit, the filling of dry batteries. In such a device both patentees found it necessary that the following conditions be present: (1) The central carbon electrode held rigid, but so that it can be easily detached. (2) The battery cup, while be: , filled, to be yieldingly supported by a measured resistance controlling the density of the packing. (3) Rotatable tamping bars or rammers. (4) A vertically reciprocating member operating in unison the tamping bars. It was such a machine as this that the complainant's assignors invented and patented. It is substantially the same machine that the defendant uses. In complainant's patent the vertically reciprocating member is called a "cross-head," as shown in the accompanying figure 1, from which are omitted the

Fig. 1

Fig. 2

remaining parts of the machine. In defendant's machine the vertically reciprocating member is called a "shaft," and is shown in figure 2. The lower part of the member and the rotatable sleeves which carry the tamping bars are sectioned.

In both of these figures B represents the "vertically reciprocating member." In complainant's machine, as shown in figure 1, this member is guided by fixed vertical rods A, which pass through the member. In defendant's machine the corresponding member passes through a, fixed guideway A'. In each of the members B there is an opening between the top and bottom portions thereof. A bracket arm, a5, is fixed to the framework of the machine, and extends into this opening in the vertically reciprocating member. The core or electrode-holding rod, E, is fixed to this bracket arm, and extends therefrom downward through a hole in the lower part, "b," of the vertically reciprocating member, and this core-holding rod has on its lower end the spring fingers, "e." In each a rotatable sleeve, D, is supported by the lower part of the vertically reciprocating member. The tamping bars, d', are secured to this sleeve; and suitable mechanism, which has not been reproduced in these figures, is provided for turning this sleeve slowly as the member, B, moves up and down, carrying with it the sleeve and tamping bars. It is necessary that the opening in the vertically reciprocating member shall be so long, measured from top to bottom, that the brackets, a5, will not be struck by either the upper or lower part of said member as it moves up and down. Complainant's patent was for a combination of coacting parts of which one was a vertically reciprocating member called a "cross-head," and of a form as shown in the figure. The term "cross-head" was doubtless unhappily applied. It was the form of mechanism occurring to the patentees, whereby vertically reciprocating motion could be transmitted to the tamping bars, but I cannot think that there was any other thought in the mind of the inventor than that such a well-known thing as vertically reciprocating motion was to be used in combination with the other elements, and that the most obvious form of applying that motion, to wit, by something in the nature or substance of a cross-head, would naturally be used. I do not think that the form of applying the vertically reciprocating motion was important, or that it is the essence of the patented invention. If so, it was easy to differentiate it as the defendant has done by what is called a "shaft." This required no inventive skill. The term "shaft" describes defendant's vertically reciprocating member even more loosely than "cross-head" describes complainant's. The latter has a visible, if not a functional, resemblance to a "cross-head." It required a vivid imagination to describe the former as a "shaft."

The two devices in all of their essential parts are the same. Being of that opinion, I think a discussion of the occurrences pending the application for complainant's patent unnecessary. If my theory of the invention and of the identity of the two machines is correct, there is nothing in the disclaimers referred to which affects the patentee's rights in this case.

A decree may be entered for an injunction and accounting.